## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NORTHLAND AUTO ENTERPRISES,     :
                                 :

            Plaintiff,            :         CIVIL ACTION NO.
                                   :

             v.                    :
                                   :

DEALER SERVICES CORPORATION,      :
                                   :

            Defendant.          :

### NOTICE

| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or other rights important to you.<br><br>**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**<br><br>PHILADELPHIA COUNTY BAR ASSOCIATION<br>Lawyer Referral and Information Service<br>One Reading Center<br>Philadelphia, PA 19107<br>Telephone: (215) 238-1701 | ### AVISO<br><br>**Le han demandado a usted en la corte.** Si usted quiere defenderse de estas demandas expuestas en la paginas siguientes, usted tiene veinte (20 dias plazo al partir de la fecha de la demanda y la notificacion. Hace falte asentar una comparencia escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y uede continuar la demanda encontra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todos las provision de esta demanda. Usted puede perder dinero o sus propiedades o otros derechos importantes para usted.<br><br>**LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.**<br><br>ASOCIACION DE LICENDIADOS FILADELFIA<br>Servicio De Referencia E Informacion Legal<br>One Reading Center<br>Philadelphia, PA 19107<br>Telefono: (215) 238-1710 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NORTHLAND AUTO ENTERPRISES,    :
850 East Cliff Road            :
Burnsville, MN 55337-1539,     :
                               :
                  Plaintiff,   :        CIVIL ACTION NO.
                               :
        v.                     :
                               :
DEALER SERVICES CORPORATION,   :
1320 City Center Drive         :
Suite 100                      :
Carmel, IN 46032-3804,         :
                               :
                  Defendant.   :

## PLAINTIFF'S VERIFIED COMPLAINT
## FOR INJUNCTIVE RELIEF AND DAMAGES

### PARTIES

1.      Plaintiff, Northland Auto Enterprises (hereinafter "Northland") is a corporation duly organized and existing under the laws of the State of Minnesota, with a principal place of business located at 850 East Cliff Road, Burnsville, MN.

2.      Northland conducts business throughout the United States providing business models, programs, products, and services for new and used car dealerships.

3.      Northland does conduct substantial business within the Commonwealth of Pennsylvania as well as the County of Philadelphia.

4.      Defendant, Dealer Services Corporation (hereinafter "DSC"), is a corporation duly organized and existing under the laws of the State of Indiana, with a principal place of business of 1320 City Center Drive, Suite 100, Carmel, IN.

1099379-1

5.     DSC's primary business is floorplan financing for car dealerships throughout the United States.

6.     DSC does conduct substantial business within the Commonwealth of Pennsylvania as well as the County of Philadelphia.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332, based on diversity of citizenship among the parties, as DSC is diverse in citizenship from Northland and the amount in controversy exceeds $75,000.00, exclusive of interests and costs, as required under 28 U.S.C. § 1332.

8.     This Court has original jurisdiction over Northland's antitrust and trademark claims under 15 U.S.C. §§ 4 (antitrust) and 1121 (trademark), and 28 U.S.C. §§ 1331 (federal question) and 1338(a) (trademarks); and original jurisdiction over Northland's unfair competition claims under 28 U.S.C. § 1331 and 1338(b) (unfair competition dealing with trademark).

9.     This Court additionally has supplemental jurisdiction over Northland's state law claims pursuant to 28 U.S.C. § 1367 because these claims arise out of the same nucleus of operative facts and are so related to claims within the Court's original jurisdiction that they form part of the same controversy.

10.     Venue is proper under 28 U.S.C. § 1391(a) and (b) because a substantial part of the events giving rise to the claim occurred in this judicial district.

## CLAIMS

11.     In 1990, Northland started the Ren'T'Own® Automobile Dealership Program.

12.     Ren'T'Own® is a registered trademark of Northland.

13.     Lease'T'Own$^{TM}$ is a trademark of Northland.

14.     Currently there are 382 active Ren'T'Own®/Lease'T'Own™ dealerships throughout the United States and over 20 in the Commonwealth of Pennsylvania.

15.     Under the Ren'T'Own®/Lease'T'Own™ Program, independent dealers are qualified, trained and supported by Northland to operate as Ren'T'Own®/Lease'T'Own™ dealers.

16.     In the Ren'T'Own®/Lease'T'Own™ Program, customers make periodic payments to the local Ren'T'Own®/Lease'T'Own™ dealers.

17.     After completing the term of the rental/lease purchase agreement payment period, the customer has the option to purchase the vehicle for its estimated cash value (in Pennsylvania) plus official fees and taxes.

18.     Currently there are approximately 10,000 automobiles nationwide enrolled in this rental/lease purchase agreement through the Ren'T'Own®/Lease'T'Own™ Program.

19.     On or about August 24, 2006, defendant DSC entered into a written agreement with Northland for the financing and marketing of Northland's Ren'T'Own® Dealer Floor Plan Program.  (Attached as Exhibit "A" is a true and correct copy of a Letter of Understanding Agreement between Northland and DSC.)

20.     Under the terms of the agreement, DSC agreed to specifically provide financing for a network of Ren'T'Own®/Lease'T'Own™ dealers previously engaged in business with Northland through the latter's Ren'T'Own®/Lease'T'Own™ Program.

21.     Currently, DSC provides floorplan financing for approximately 4,000 automobiles nationwide that are enrolled in the Ren'T'Own®/Lease'T'Own™ Program through Northland, and for over 890 automobiles in the Commonwealth of Pennsylvania.

22.     On or about September 30, 2008, DSC gave written notification of its intention to terminate the August 2006 agreement with Northland.

23.     DSC acknowledged that all obligations of the parties arising out of transactions consummated prior to the termination date would survive.  (Attached as Exhibit "B" is a true and correct copy of this letter.)

24.     On or about October 1, 2008, DSC sent written notice to all of Northland's Ren'T'Own®/Lease'T'Own™ dealers announcing the termination.  (Attached as Exhibit "C" is a true and correct copy of this notice.)

25.     Upon terminating its agreement with Northland, DSC sent written notice to all of Northland's Ren'T'Own®/Lease'T'Own™ dealers advising them that the "Rent to Own" program belongs to DSC, that the program was undergoing changes, and that if they were receiving financing from DSC, they were obligated to terminate their relationship with Northland and establish new contracts with entities providing competing services.

26.     Based upon information and belief, DSC is pressuring Northland's Ren'T'Own®/Lease'T'Own™ dealers to sign contracts with Northland's competitors and to sever their agreements with Northland, under the threat of freezing or cancelling the Northland's Ren'T'Own®/Lease'T'Own™ dealers financing.

27.     DSC has also sought to mislead Northland's customers about the designation and origin of services by misappropriating Northland's trademark Ren'T'Own®/Lease'T'Own™, and by misrepresenting facts to Northland's customers concerning goods and services.  DSC's actions in this regard have caused confusion, mistake and deception.

28.     DSC has further conspired with Northland's competitors to restrain trade and put Northland out of business.  By tying in a number of services with credit financing, DSC has sought to regulate the industry by overtly coercive means.

29.     DSC has further breached its contractual agreement with Northland by failing to pay Northland commissions and monies it is entitled to per the ongoing business relations between the parties and the letter of understanding agreement.

## COUNT I

## (PRELIMINARY INJUNCTION)

30.     Northland sues DSC for preliminary injunctive relief, and incorporates by reference paragraphs 1 through 29 above, as though fully set forth herein.

31.     The activities of DSC alleged above have caused and will continue to cause immediate and irreparable injury and harm to Northland.

32.     More specifically, Northland will not be able to maintain their business relationships with their Ren'T'Own®/Lease'T'Own™ dealers as a result of DSC's actions and Northland will suffer irreparable financial loss.

33.     Northland has a clear legal right to injunctive relief.

34.     DSC has intentionally and improperly engaged in a course of conduct commencing after their September 30, 2008 termination letter and continuing to the present whereby they have interfered with Northland's contractual relationships with their Ren'T'Own®/Lease'T'Own™ dealers by:

     a.     Pursuing business relations with Northland's Ren'T'Own®/Lease'T'Own™ dealers independent of Northland.

     b.     Pursuing business relations with Northland's Ren'T'Own®/Lease'T'Own™ dealers to the exclusion of Northland.

     c.     Requiring Northland's customers to breach their contracts with Northland.

     d.     Misappropriating Northland's trademark Ren'T'Own®/Lease'T'Own™ to mislead Northland's customers.

     e.     Misrepresenting facts to Northland's customers concerning goods and services, in restraint of trade.

      f.       Conspiring with Northland's competitors to restrain trade in interstate commerce.

      g.      Failing to pay Northland the commissions and monies it is entitled to from the ongoing business relations between the parties and the letter of understanding agreement.

35.      Any money damages would not adequately compensate Northland for the loss of business and damage to their reputation.

36.      As a result of the aforesaid, Northland does not have an adequate remedy-at-law.

37.      Northland is substantially likely to prevail at trial.  The threatened harm to Northland if no injunction is issued outweighs any potential harm to DSC should an injunction issue improvidently, because defendant will only be restrained temporarily from collecting fees pursuant to their mandatory program that they are not entitled to collect.

38.      By contrast, absent injunctive relief, Northland will suffer substantial damages as a result of the loss of business and loss of dealerships.  Northland has no adequate remedy-at-law.

39.      Northland asks this Court to accept this application for preliminary injunction for a hearing and, after the hearing, to issue a preliminary injunction against DSC.

**WHEREFORE**, Plaintiff, Northland respectfully requests that Defendant DSC, its subsidiaries, affiliates, officers, agents, attorneys, servants, employees, and all other persons in active concert or participation with it or any of them or any of their successors and assigns, be preliminarily enjoined as follows:

      a.      From causing Northland irreparable harm, by continuing to contact the Ren'T'Own®/Lease'T'Own$^{TM}$ dealers regarding termination of their business relations with Northland;

      b.      From freezing financing for Northland's Ren'T'Own®/Lease'T'Own$^{TM}$ dealers;

      c.      From any act in restraint of trade;

d.      From any further action in violation of the rights of Plaintiff, including any act infringing on Plaintiff's trademarks;

e.      From any act or thing calculated or likely to cause confusion or mistake in the minds of the trade or the public to deceive customers into the belief that Defendant's services and/or goods come from or are the same as the services and/or goods of Plaintiff;

f.      From disparaging or otherwise competing unfairly with Plaintiff; and

g.      Awarding Northland their taxable costs to this action and any other and further relief as this Court deems just and proper.

## COUNT II

## (PERMANENT INJUNCTION)

40.      Northland sues DSC for permanent injunctive relief, and incorporates by reference paragraphs 1 through 39 above, as though fully set forth herein.

41.      The activities of DSC alleged above have caused and will continue to cause immediate and irreparable injury and harm to Northland.

42.      More specifically, Northland will not be able to maintain their business relationships with their Ren'T'Own®/Lease'T'Own$^{TM}$ dealers as a result of DSC's actions and Northland will suffer irreparable financial loss.

43.      Northland has a clear legal right to injunctive relief.

44.      DSC has intentionally and improperly engaged in a course of conduct commencing after their September 30, 2008 termination letter and continuing to the present whereby they have interfered with Northland's contractual relationships with their Ren'T'Own®/Lease'T'Own$^{TM}$ dealers by:

a.      Pursuing business relations with Northland's Ren'T'Own®/Lease'T'Own$^{TM}$ dealers independent of Northland.

b.      Pursuing business relations with Northland's Ren'T'Own®/Lease'T'Own$^{TM}$ dealers to the exclusion of Northland.

c.      Requiring Northland's customers to breach their contracts with Northland.

    d.      Misappropriating Northland's trademark Ren'T'Own®/Lease'T'Own™ to mislead Northland's customers.

    e.      Misrepresenting facts to Northland's customers concerning goods and services, in restraint of trade.

    f.      Conspiring with Northland's competitors to restrain trade in interstate commerce.

    g.      Failing to pay Northland the commissions and monies it is entitled to from the ongoing business relations between the parties and the letter of understanding agreement.

45.     Any money damages would not adequately compensate Northland for the loss of business and damage to their reputation.

46.     As a result of the aforesaid, Northland does not have an adequate remedy-at-law.

47.     Northland is substantially likely to prevail at trial.

48.     Absent injunctive relief, Northland will suffer substantial damages as a result of the loss of business and loss of dealerships.  Northland has no adequate remedy-at-law.

49.     Northland asks this Court to accept this application for permanent injunction for a full trial on the merits, and after trial, issue a permanent injunction against DSC.

**WHEREFORE**, Plaintiff, Northland respectfully requests that Defendant DSC, its subsidiaries, affiliates, officers, agents, attorneys, servants, employees, and all other persons in active concert or participation with it or any of them or any of their successors and assigns, be permanently enjoined as follows:

    a.      From causing Northland irreparable harm, by continuing to contact the Ren'T'Own®/Lease'T'Own™ dealers regarding termination of their business relations with Northland;

    b.      From freezing financing for Northland's Ren'T'Own®/Lease'T'Own™ dealers;

    c.      From any act in restraint of trade;

    d.      From any further action in violation of the rights of Plaintiff, including any act infringing on Plaintiff's trademarks;

e.   From any act or thing calculated or likely to cause confusion or mistake in the minds of the trade or the public to deceive customers into the belief that Defendant's services and/or goods come from or are the same as the services and/or goods of Plaintiff;

f.   From disparaging or otherwise competing unfairly with Plaintiff; and

g.   Awarding Northland their taxable costs to this action and any other and further relief as this Court deems just and proper.

## COUNT III
## (FEDERAL ANTITRUST VIOLATION)

50.   Northland incorporates by reference paragraphs 1 through 49 above, as though fully set forth herein.

51.   DSC has unlawfully conditioned its agreement to provide financing to Northland's customers, upon their agreement to use DSC's exclusive services for contingent insurance, GPS, and warranty coverage.

52.   DSC's unlawful actions in restraint of trade have the effect of substantially lessening competition and tend to create a monopoly, in violation of the Clayton Act (15 USC §1, et seq.).

53.   DSC's unlawful actions in restrain of trade have the additional effect of increasing prices to Northland's customers.

54.   Northland has suffered and will continue to suffer damages, as a result of DSC's actions, in the form of inability to compete for business in the line of commerce which they pioneered.

**WHEREFORE**, Plaintiff, Northland demands temporary and permanent injunctive relief against Defendant DSC, treble damages, plus all costs of suit, attorneys fees, and prejudgment interest and for such other and further relief as this Court deems just and proper.

## COUNT IV
## (FEDERAL TRADEMARK INFRINGEMENT)

55.     Northland incorporates by reference paragraphs 1 through 54 above, as though fully set forth herein.

56.     "Ren'T'Own®" is a valid, legally protectable, and registered trademark of Northland Auto Enterprises, Inc.

57.     Northland has owned and operated under the "Ren'T'Own®" trademark since 1990. Northland has owned and operated under the Lease'T'Own$^{TM}$ since 2001.

58.     DSC's use of Northland's trademark wrongfully and falsely designates the origin of the services, causing confusion, mistake, and deception as to the origin, affiliation, connection, certification, and association of DSC's services with Northland.

59.     DSC's infringement of Northland's trademark outside the Commonwealth and among various States, has affected Northland's business nationwide, thus affecting interstate commerce. DSC has thereby violated the Lanham Act (15 USC §1125).

60.     Northland has suffered and will continue to suffer damages, as a result of DSC's actions, in the form of lost income and revenue, which is necessary to maintain and run their business.

**WHEREFORE**, Plaintiff, Northland demands temporary and permanent injunctive relief against Defendant DSC, recovery of defendant's profits as assessed by the Court, treble damages, plus all costs of suit, attorneys fees, and prejudgment interest and for such other and further relief as this Court deems just and proper.

## COUNT V
## (FEDERAL UNFAIR COMPETITION LAW)

61.     Northland incorporates by reference paragraphs 1 through 60 above, as though fully set forth herein.

62.     DSC falsely marketed competing services to Northland's customers using Northland's trademark Ren'T'Own®/Lease'T'Own$^{TM}$.

63.     DSC further conspired with Northland's competitors to restrain trade and violate antitrust laws.

64.     In so doing, DSC sought to coerce and mislead Northland's customers about the origin of services, which causes confusion, mistake, and deception.

65.     DSC's actions are deliberate, willful, and wanton.

66.     DSC's actions reach outside the Commonwealth to Northland's business in and among various States, affecting Northland's business nationwide, thus affecting interstate commerce.

67.     Northland has suffered and will continue to suffer damages, as a result of DSC's actions, in the form of lost income and revenue, necessary to maintain and operate their business.

**WHEREFORE**, Plaintiff, Northland demands temporary and permanent injunctive relief against Defendant DSC, treble damages, plus all costs of suit, attorneys fees, and prejudgment interest and for such other and further relief as this Court deems just and proper.

## COUNT VI
## (BREACH OF CONTRACT)

68.     Northland incorporates by reference paragraphs 1 through 67 above, as though fully set forth herein.

69.     Pursuant to the letter of understanding agreement, DSC agreed to finance the floor plan inventory of Northland's Ren'T'Own®/Lease'T'Own$^{TM}$ dealers, in exchange for Northland's promotion of DSC financing. DSC agreed to pay Northland commissions on vehicles financed under the Ren'T'Own®/Lease'T'Own$^{TM}$ program. DSC also agreed to responsibly carry out its ongoing business obligations beyond the termination of the contract.

1099379-1                                    11

70.     DSC breached this contract by, inter alia:

   a.   Pursuing business relations with Northland's customers independent of, Northland

   b.   Pursuing business relations with Northland's customers to the exclusion of Northland.

   c.   Encouraging Northland's customers to breach their contracts with Northland.

   d.   Misappropriating Northland's trademark Ren'T'Own®/Lease'T'Own$^{TM}$ to mislead Northland's customers.

   e.   Misrepresenting facts to Northland's customers concerning goods and services, in restraint of trade.

   f.   Conspiring with Northland's competitors to restrain trade in interstate commerce.

   g.   Failing to pay Northland the commissions and monies it is entitled to from the ongoing business relations between the parties and the contract contained in the letter of understanding agreement.

71.     DSC further agreed not to assign any rights or duties to third parties under the agreement.

72.     DSC breached that agreement by engaging several third party businesses to provide contingent liability insurance, GPS services, and warranty coverage.

73.     DSC also agreed to acknowledge and not abuse Northland's trademark program title, Ren'T'Own®/Lease'T'Own$^{TM}$.

74.     DSC violated this agreement by:

   a.   Continuing to use the trademark beyond the notice date of its termination with Northland.

   b.   Misappropriating Northland's trademark Ren'T'Own®/Lease'T'Own$^{TM}$ to mislead Northland's customers.

   c.   Misrepresenting facts to Northland's customers concerning goods and services, in restraint of trade.

   d.   Pursuing business relations with Northland's customers independent of, Northland.

   e.  Pursuing business relations with Northland's customers to the exclusion of Northland.

   f.  Encouraging Northland's customers to breach their contracts with Northland.

   h.  Conspiring with Northland's competitors to restrain trade in interstate commerce.

**WHEREFORE**, Plaintiff, Northland demands judgment for damages against defendant DSC, plus all costs of suit and interest and for such other and further relief as this Court deems just and proper.

## COUNT VII

## (TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS)

75.    Northland incorporates by reference paragraphs 1 through 74 above, as though fully set forth herein.

76.    Since 1990, Northland has invested valuable time, expenses, and resources into building and expanding a network of business relationships with automobile dealers, dealers whom Northland recruited to be customers of its Ren'T'Own® and now Ren'T'Own®/Lease'T'Own™ Dealer program.

77.    DSC knew of Northland's contractual relationships and purposefully sought to interfere with those relationships by telling Northland's customers to terminate their contractual relationship with Northland and threatening to immediately withhold financing from those dealers/customers who did not comply with DSC's mandate.

78.    DSC acted with specific intent to harm Northland's contractual relationships by engaging outside entities to provide competing services to Northland's customers, using Northland's trademark Ren'T'Own®/Lease'T'Own™ to market those competing services, and coercing Northland's customers to sign agreements exclusively with those outside entities.

79.     Despite such knowledge of Northland's contractual relationships and awareness of Northland's trademark Ren'T'Own®/Lease'T'Own™, DSC used and continues to use Northland's trademark.  Not only does this cause confusion and misunderstanding regarding which respective products and services Northland and DSC provide, but also was done to wrongfully compete with Northland and interfere with Northland's contractual relationships with existing clients.

80.     Northland has, and will continue to, suffer direct harm as a result of this conduct by the loss of business.

**WHEREFORE**, Plaintiff, Northland demands temporary and permanent injunctive relief against Defendant DSC, treble damages, punitive damages, plus all costs of suit, attorneys fees, and prejudgment interest and for such other and further relief as this Court deems just and proper.

## COUNT VIII
## (PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW)

81.     Northland incorporates by reference paragraphs 1 through 80 above, as though fully set forth herein.

82.     In furtherance of its efforts to seize Northland's business, DSC has falsely, intentionally, and with reckless indifference to Northland's customers, represented that DSC has the right to mandate certain tie-in provisions with its financing operations.

83.     DSC has falsely, intentionally, and with reckless indifference, represented to Northland's customers that they must sever their contractual relationships with Northland and accept mandatory services from competing entities, pre-selected by DSC.

84.     At the time it made these false representations, DSC had actual knowledge of their falsity, both through common industry practice, and having been specifically informed that such actions are unlawful, tortious, false, and deceptive.

85.     Northland has received notice from various customers seeking clarification of their rights and obligations with respect to the false DSC representations.

86.     Upon information and belief, many of Northland's customers are ignorant of the falsity of the representations.

87.     DSC has sent multiple written notices to Northland's customers, seeking to force them to act upon DSC's false representations, coercing them to sever contractual relations with Northland, and to enter into DSC-mandated contractual agreements with other entities.

88.     Upon information and belief, many of Northland's customers have acted upon DSC's false representations, incurring damages including increased service charges.

89.     DSC's actions constitute a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. §201-1, et seq.).

90.     Northland has suffered and will continue to suffer damages, as a result of DSC's actions, in the form of lost income, revenue, clients, and trademark rights necessary to maintain and operate their business.

**WHEREFORE,** Plaintiff, Northland demands temporary and permanent injunctive relief against Defendant DSC, restitution, treble damages, punitive damages, plus all costs of suit, attorneys fees, and prejudgment interest and for such other and further relief as this Court deems just and proper.

## COUNT IX
## (PENNSYLVANIA ANTITRUST VIOLATION)

91.     Northland incorporates by reference paragraphs 1 through 90 above, as though fully set forth herein.

92.     DSC has unlawfully conditioned its agreement to provide financing to Northland's customers, upon their agreement to use DSC's exclusive services for contingent insurance, GPS, and warranty coverage.

93.     DSC's unlawful actions in restraint of trade have the effect of substantially lessening competition and tend to create a monopoly, in violation of Pennsylvania common law of antitrust and law against restraint of trade.

94.     DSC's unlawful actions in restraint of trade have the additional effect of increasing prices to Northland's customers.

95.     Northland has suffered and will continue to suffer damages, as a result of DSC's actions, in the form of inability to compete for business in the line of commerce which they pioneered.

**WHEREFORE**, Plaintiff, Northland demands temporary and permanent injunctive relief against Defendant DSC, treble damages, punitive damages, plus all costs of suit, attorneys fees, and prejudgment interest and for such other and further relief as this Court deems just and proper.

## COUNT X
## (PENNSYLVANIA TRADEMARK INFRINGEMENT)

96.     Northland incorporates by reference paragraphs 1 through 95 above, as though fully set forth herein.

97.     "Ren'T'Own®"/Lease'T'Own™ are valid, legally protectable, trademarks of Northland Auto Enterprises, Inc.

98.     Northland has owned and operated under the "Ren'T'Own®" trademark since 1990 and Lease'T'Own™ since 2001.

99.     DSC's use of Northland's trademark wrongfully and falsely designates the origin of the services, causing confusion, mistake, and deception as to the origin, affiliation, connection, certification, and association of DSC's services with Northland.

100.    DSC's use of Northland's trademark violates Pennsylvania common law against trademark infringement.

101.    Northland has suffered and will continue to suffer damages, as a result of DSC's actions, in the form of lost income and revenue, necessary to maintain and run their business.

**WHEREFORE**, Plaintiff, Northland demands temporary and permanent injunctive relief against Defendant DSC, recovery of defendant's profits as assessed by the Court, treble damages, punitive damages, plus all costs of suit, attorneys fees, and prejudgment interest and for such other and further relief as this Court deems just and proper.

### COUNT XI
### (PENNSYLVANIA UNFAIR COMPETITION LAW)

102.    Northland incorporates by reference paragraphs 1 through 101 above, as though fully set forth herein.

103.    DSC falsely marketed competing services to Northland's customers using Northland's trademarks Ren'T'Own®/Lease'T'Own™.

104.    DSC further conspired with Northland's competitors to restrain trade and violate antitrust laws.

105.    In so doing, DSC sought to coerce and mislead Northland's customers about the designation of origin of services, causing confusion, mistake and deception.

106.    DSC's actions are deliberate, willful, and wanton.

107.    DSC's actions reach outside the Commonwealth to Northland's business in and among various States, affecting Northland's business nationwide, thus affecting interstate commerce.

108.   Northland has suffered and will continue to suffer damages, as a result of DSC's actions, in the form of lost income and revenue, necessary to maintain and operate their business.

**WHEREFORE**, Plaintiff, Northland demands temporary and permanent injunctive relief against Defendant DSC, treble damages, punitive damages, plus all costs of suit, attorneys fees, and prejudgment interest and for such other and further relief as this Court deems just and proper.

**COUNT XII**
**(CONSUMER FRAUD)**

109.   Northland incorporates by reference paragraphs 1 through 108 above, as though fully set forth herein.

110.   In furtherance of its efforts to seize Northland's business, DSC sent written notice to all of Northland's Ren'T'Own®/Lease'T'Own$^{TM}$ dealers falsely advising them that the "Rent to Own" program belonged to DSC, that the program was undergoing changes, and that if they were receiving financing through DSC, they were obligated to terminate their relationship with Northland and establish new contracts with entities providing competing services.

111.   DSC has sought to mislead Northland's customers about the designation and origin of services by misappropriating Northland's trademark Ren'T'Own®/Lease'T'Own$^{TM}$, and by misrepresenting facts to Northland's customers concerning goods and services.  DSC's actions in this regard have caused confusion, mistake, and deception.

112.   DSC's brazen actions to coerce Northland's customers to terminate their contracts with Northland and establish new contracts with Northland's competitors, under threat of losing financing, coupled with false representations about the services offered, is patently fraudulent.

113.   These fraudulent statements in restraint of trade have already and continue to cause substantial injury and damage to both Northland and its customers in the form of monetary

loss by each of them, increased service charges for Northland's customers, and damage to Northland's reputation.

114.    Northland has suffered and will continue to suffer damages, as a result of DSC's actions, in the form of lost income, revenue, clients, and trademark rights necessary to maintain and operate their business.

**WHEREFORE**, Plaintiff, Northland demands temporary and permanent injunctive relief against Defendant DSC, restitution, treble damages, punitive damages, plus all costs of suit, attorneys fees, and prejudgment interest and for such other and further relief as this Court deems just and proper.

## COUNT XIII
## (PUNITIVE DAMAGES)

115.    Northland incorporates by reference paragraphs 1 through 114 above, as though fully set forth herein.

116.    Defendant's actions as set forth above were intentional, wanton, and willful.

117.    Defendants' intentional, wanton, willful, and outrageous actions consisted of, but are not limited to:

      a.      Fraudulently communicating to clients of Plaintiff Northland that said clients may not conduct business with Northland.

      b.      Attempting to steal business from Northland by lying to Northland's clients regarding their rights in obtaining vehicle warranties and service, GPS devices and service, and contingent liability insurance coverage, for their vehicles in the Ren'T'Own®/Lease'T'Own$^{TM}$ program.

      c.      Encouraging Northland's customers to breach their contracts with Northland.

      d.      Misappropriating Northland's trademark Ren'T'Own® /Lease'T'Own$^{TM}$ to mislead Northland's customers.

      e.      Misrepresenting facts to Northland's customers concerning goods and services, in restraint of trade.

f.   Conspiring with Northland's competitors to restrain trade in interstate commerce.

g.   Inhibiting competition by attempting to tie-in DSC's unique financing services for the Ren'T'Own®/Lease'T'Own™ program with vehicle warranty and service, GPS devices and service, and contingent liability insurance coverage.

118.   By reason of the intentional, wanton, willful, and outrageous conduct of Defendant, as aforesaid, Northland has sustained significant irreparable and ongoing damage to their business and reputation.

Respectfully submitted,

**SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD.**

By: _____
        David C. Weinberg, Esquire
        Attorney I.D. No. 40071
        Walter H. Swayze, III, Esquire
        Attorney I.D. No. 59101
        Brian W. Franklin, Esquire
        Attorney I.D. No. 202523
        30 South 17th Street
        United Plaza – Suite 1700
        Philadelphia, PA  19103
        Telephone: (215) 972-8015
        Facsimile: (215) 972-8016

        Attorneys for Plaintiff,
        Northland Auto Enterprises

## VERIFICATION

The undersigned, having read the foregoing Plaintiff's Verified Complaint for Temporary and Permanent Injunction, verifies that the facts stated therein are true and accurate to the best of his/her information and belief.

Date: *10-21-08*

Allen Lentsch

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NORTHLAND AUTO ENTERPRISES, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | |
| DEALER SERVICES CORPORATION, | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing Plaintiff's Verified Complaint for Injunctive Relief and Damages was served via facsimile and first class mail, postage pre-paid, upon the following on the date indicated below:

> Rich Coutu
> Vice President, Sales & Marketing
> Dealer Services Corporation
> 1320 City Center Dr., Suite 100
> Carmel, IN 46032
> f: 866-924-4830

By: _____
David C. Weinberg, Esquire
Attorney I.D. No. 40071
Walter H. Swayze, III, Esquire
Attorney I.D. No. 59101
Brian W. Franklin, Esquire
Attorney I.D. No. 202523
30 South 17th Street
United Plaza – Suite 1700
Philadelphia, PA  19103
Telephone: (215) 972-8015
Facsimile: (215) 972-8016

Attorneys for Plaintiff,
Northland Auto Enterprises

Dated:  October 22, 2008

1099379-1

EXHIBIT A

August 23, 2006

John Fuller
President
Dealer Service Corporation
Two Penn Mark Plaza
11555 North Meridian, Suite 220
Carmel, IN 46032

Dear John:

### LETTER OF UNDERSTANDING

This document memorializes a working relationship between Dealer Services Corporation (DSC) and Northland Auto Enterprises, Inc. (Northland).

This Letter of Understanding is applicable to the cooperative marketing and the enrollment of dealers to participate in the DSC Floor Plan program designed specifically for Ren'T'Own® vehicles and dealers. This Letter of Understanding also incorporates GPS tracking and shutoff devices and Key Auto Protection Engine and Transmission warranties, as integrated components, of the DSC Floor Plan program for Ren'T'Own® vehicles and dealers.

**DSC Agrees To:**

- Promote and market the DSC Ren'T'Own® Dealer Floor Plan program.

- Work with Northland to develop and coordinate an overall program that will best promote and position a floor plan program for Ren'T'Own® dealers and vehicles.

- Receive and process dealer applications for the DSC Ren'T'Own® Dealer Floor Plan program.

- Provide approved Ren'T'Own® dealers with DSC floor plan funding subject to DSC underwriting and contracting requirements.

- Provide Northland dealers preferred Northland rate for DSC floorplan services.

- Compensate Northland with the following commissions, paid on a monthly basis for enrolled dealers under the DSC Ren'T'Own® Floor Plan program.  No compensation will be paid by DSC to Northland for dealers previously contracted by DSC or for dealers presented to DSC by DSC's field representatives or Agents.

| | |
|---|---|
| $75.00 | For each unique RTO dealer contracted by DSC for floorplan services (having floored at least one vehicle) as a result of an application delivered to DSC by Northland. |
| $3.50 | For each unique vehicle floor plan ned by contracted dealer within the initial 12 months following dea er contracting date by DSC as a result of an application delivered to DSC by Northland. |
| $2.00 | For each unique vehicle floor plan ned by contracted dealer after the initial 12 months up to and incl ding the 24 month following dealer contracting date by DSC as a result of an application delivered to DSC by Northland. |
| $1.00 | For a contracted dealer that has been an act ve dealer for equal or greater than 24 months, for each unique vehicle floored in a calendar month by such dealer, Northland shall receive a one time $1.00 commission for such floored vehicle for that month only if Northland has generated an additional contracted and active dealer for DSC in that same calendar month. |

**Northland Agrees To:**

- Promote and market the DSC Ren'T'Own® Dealer Floor Plan program on an exclusive basis in conjunction with all sales and marketing activities.

- Work with DSC to develop and coordinate an overall program that will best promote and position a floor plan program for Ren'T'Own® dealers.

- Coordinate the enrollment of Ren'T'Own® dealers with DSC and provide appropriate marketing materials to DSC as nee led.

- Provide digital GPS tracking devices and Key Auto Protection Engine and Transmission warranties for the vehicles as components of the DSC Ren'T'Own® Floor Plan program.

- Compensate DSC with the following commissions, paid on a monthly basis, for dealers enrolled by DSC, DSC branch offices or DSC's field representatives or Agents, under the DSC Ren'T'Own® Floor Plan program:

**Ren'T'Own® Program**

| | |
|---|---|
| $200.00 | Per enrolled dealer for each enrolled dealer not currently a Northland dealer as of launch date and who is granted a DSC Rent'T'Own® Floor Plan. |
| $2.00 | Per active vehicle per month |

**Key Auto Protection Warranties (Engine and Transmission)**

| | |
|---|---|
| $30.00 | Per 2 Year 30,000 Mile Warranty sold |
| $60.00 | Per 3 Year 50,000 Mile Warranty sold |

**GPS Vehicle Tracking Devices**
$20.00      Per device sold

- Compensate DSC with the following commissions, paid on a monthly basis, for dealers enrolled by Northland, under the DSC Ren'T'Own® Floor Plan program:

**Ren'T'Own® Program**
$100.00      Per enrolled dealer for each enrolled dealer not currently a Northland dealer as of launch date and who is granted a DSC Rent'T'Own® Floor Plan.

$1.00      Per active vehicle per month

**Key Auto Protection Warranties (Engine and Transmission)**
$15.00      Per 2 Year 30,000 Mile Warranty sold

$30.00      Per 3 Year 50,000 Mile Warranty sold

**GPS Vehicle Tracking Devices**
$10.00      Per device sold

Either party can terminate this Letter of Understanding with a thirty-day (30) advance written notice.   The following signatures constitute acceptance of this Letter of Understanding.

This Letter of Understanding is intended to be and shall be binding on and inure to the benefit of the parties and their respective successors, representatives, and assigns. Neither this Agreement nor any rights or duties hereunder may be assigned or delegated by either party without the prior consent of the other party.  However, Textron Financial Corporation, as Agent shall be deemed a permitted assign of DSC by Northland.

DSC acknowledges that Ren'T'Own® is a registered trademark of Northland.  For the purposes stated herein, Northland grants DSC consent to use the Ren'T'Own® name, logo, trade name and trademark in conjunction with marketing the DSC Ren'T'Own® Dealer Floor Plan program to its dealer body and the general public.

Northland reserves the right to revoke the consent granted herein by complying with the termination notice requirements as referenced above and DSC agrees to cease using said Ren'T'Own® logo, trade name and trademark upon expiration of 30 days from the point of notification of such termination.

For: Dealer Services Corporation
    John Fuller, President

Print Name  _JOHN E. FULLER_

Title  _CEO_

Signature  _John E. Fuller_      Date _8/24/06_

For: Northland Auto Enterprises, Inc.
    Allen Lentsch, President

Print Name _ALLEN LENTSCH_

Title _PRESIDENT_

Signature _[signature]_     Date _8-23-06_

EXHIBIT B



DEALER SERVICES CORPORATION

September 30, 2008

*Via Overnight Federal Express and Facsimile*

Mr. Al Lentsch
Northland Auto Enterprises
850 East Cliff Road
Burnsville, MN 55337

      Re: Notice of Termination

Dear Mr. Lentsch:

This letter shall serve as written notice by Dealer Services Corporation ("DSC") as required by the Letter of Understanding ("Agreement") of DSC's election to terminate the Agreement.

The Agreement requires thirty (30) days prior written notice of DSC's election to terminate. Accordingly, the termination shall be effective as of the close of business, October 31, 2008 ("Termination Date"). DSC expects Northland Enterprises to faithfully perform its obligations under the Agreement through the Termination Date. All obligations of the parties arising out of transactions consummated prior to the Termination Date shall survive.

Please contact me at 317-571-3721 should you have any questions regarding the matter contained herein.

Sincerely,

Martin J. McFarland
Chief Financial Officer
Dealer Services Corporation

EXHIBIT C



October 1, 2008

MICHAEL L. SPESSARD
CARZ4U LLC
2020 E PIKES PEAK AVE
COLORADO SPRINGS, CO 80909

Dear MICHAEL L. SPESSARD.

It is my pleasure to announce some exciting changes that we are making to our current Rent to Own finance product. You are receiving this letter because you currently have an approved Rent to Own/Lease to Own ("RTO/LTO") line of credit with Dealer Services Corporation ("DSC"). This letter will serve as an initial introduction of DSC's new offering and will be followed by the delivery of a "Welcome Packet" to your place of business within 7-10 days from today. *It is very important that you review this letter as well as the "Welcome Packet" very carefully as these changes will take affect November 1, 2008.*

DSC is constantly striving to provide our customers with the best possible finance products and third party vendor relationships they need to run a successful business. After thorough review of our RTO/LTO vendor relationships we have decided to strengthen our RTO/LTO product offering by forging alliances with new vendors.

*Effective November 1, 2008 DSC has chosen the following companies as the mandatory components of our RTO/LTO transactions; to include Service Contracts, GPS and Contingent Liability on any RTO/LTO inventory financed with DSC.*

AUL Administrators – Limited Warranty/Vehicle Service Contract
iMetrik Solutions/ION GPS – GPS/Starter Interrupt Device
Selective Insurance – Contingent Liability Insurance

As a valued customer of DSC we have negotiated group rates for each of the products listed above. We feel that the products and services these companies have to offer will be a tremendous value to your business. Each of these companies is prepared to provide you with the service that you deserve.

In the following pages you will be given very important information on the steps that you need to take over the next 30 days to get prepared for these changes. Please keep in mind that these steps are mandatory requirements for all DSC financed inventory. We will be readily available to help you through this process. Be assured that at no time will your DSC financed Rent to Own/Lease to Own inventory be without contingent liability insurance coverage.

Please look for your "Welcome Packet" to arrive within the next 7-10 days. This will provide you with detailed information on every aspect of the changes mentioned above. We appreciate your business and THANK YOU for choosing DSC!

Sincerely,

Rich Coutu
Vice President, Business Development
Dealer Services Corporation
1320 City Center Dr, Suite 100
Carmel, IN 46032